VIRGINIAN LIMESTONE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51766. Filed June 14, 1956.

*John F. Lane, Esq.,* and *Carl M. English, Esq.,* for the petitioner.
*Robert E. Johnson, Esq.,* for the respondent.

556

**OPINION.**

PIERCE, *Judge:* The controversy here is basically one as to the proper construction and application of those provisions of the 1939 Code, as amended,[2] which control the rates of percentage depletion for petitioner's product.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

For percentage depletion allowable under this subsection, see section 114 (b), (3) and (4).

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

\*          \*          \*          \*          \*          \*          \*

The petitioner's position is that, when Congress provided in section 114 (b) (4) (A) (ii) that the allowance for depletion "shall be * * * in the case of dolomite * * * 10 per centum * * * of the gross income from the property during the taxable year," it intended the term "dolomite" to mean and designate a particular class of natural rock which is commonly known by that name; that the rock here involved was of such class; and hence, that percentage depletion should be allowed in respect of all of petitioner's rock at the uniform rate of 10 per cent, irrespective of the end-uses to which the rock products were put by customers.

The respondent's position, on the other hand, is that the intent of Congress, in amending section 114 (b) (4) (A) in a manner that extended the benefits of percentage depletion to additional nonmetallic minerals, was to equalize the depletion rates among minerals that compete with one another; that there are no "definite lines of demarcation on the basis of chemical analysis between dolomite, stone, calcium carbonates, and metallurgical grade limestone"; and, hence, that the end-use test is necessary to facilitate administration of the statute, and to attain what respondent believes to have been the objectives of Congress. As regards the specific rates to be applied, respondent stated in his brief as follows:

In order to promote a uniform and equitable administration of section 114 (b) (4) (A), *supra*, as it applies to a rock consisting essentially of a mixture of calcium carbonate and magnesium carbonate [which would include dolomite], the mined mineral should be classified as follows:

(a) If it is used or sold for use as flux in a metallurgical process, it will be classified as "metallurgical grade limestone". This definition would include the sales [of petitioner] in the amount of $10,535.14 to the Electro Metallurgical Company, which would qualify for 15% depletion.

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND FOR CERTAIN OTHER MINES AND NATURAL MINERAL DEPOSITS.

(A) IN GENERAL.—The allowance for depletion under section 23 (m) in the case of the following mines and other natural deposits shall be—

(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite, marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride, and bromine, 5 per centum,

(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum,

(iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, quarzite, diatomaceous earth, metallurgical grade limestone, chemical grade limestone, and potash, 15 per centum, and

(iv) in the case of sulfur, 23 per centum,

of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

[Section 114 (b) (4) (A), as shown above, reflects the amendment thereto made by section 319 (a) of the Revenue Act of 1951.]

(b) If it is used or sold for use as insulating and fireproofing material, as a refractory or calcined to make a dolomitic lime or plaster or dead burned to make a refractory, it will be classified as "dolomite". Petitioner's stone was not so used.

(c) If it is used or sold as a soil conditioner, it will be classified as calcium and magnesium carbonates. This definition would include the sales in the amount of $10,364.40 made by petitioner for use in agriculture.

(d) If it is used or sold for use as crushed rock, riprap, dimension stone, or similar purposes where the physical character and not the chemical composition is a major requirement, it will be classified as "stone".

It should be observed that the present positions of both the petitioner and the respondent, as above set forth, are different from their original positions. Petititoner, on its return, claimed a 15 per cent rate of percentage depletion on all its rock; but it now contends that such rate should be 10 per cent. Respondent, in his notice of deficiency, allowed a rate of 10 per cent on the rock sold to Electro Metallurgical Company, and allowed 5 per cent on all other rock sold; but he now suggests a rate of 15 per cent for the rock sold to the Metallurgical Company, a rate of 10 per cent for the rock used for agricultural purposes, and a rate of 5 per cent on the remainder.

## *I.*

At the outset of our consideration, it should be pointed out that we have hereinabove found, as a fact, that all of the rock which petitioner quarried and sold in 1951 was dolomite, within the commonly understood commercial meaning of that term. Also, we have found, as a fact, that the term "dolomite," as used with reference to rock, is a term of specific designation, which has reference to a particular class of sedimentary rock that is rich in magnesium carbonate; whereas "stone" and "limestone" are terms of more general classification, and may refer to rocks which contain little or no magnesium carbonate. These findings of fact are based on our consideration of all the evidence, including the testimony of expert witnesses presented by petitioner, who had outstanding qualifications and long experience in classifying rocks. [3]

[3] Additional facts, established by the evidence, include:

"Dolomite" is the name of a mineral, and also the name of a rock. Dolomite, the mineral, is a crystallized substance, characterized by definite arrangement of the atomic particles composing it. In its theoretically pure form, it is composed of approximately equal parts of calcium carbonate and magnesium carbonate. As such, it rarely, if ever, occurs in nature; is not marketed in industry or commerce; and is generally regarded to be a "museum curiosity." Such mineral is not here involved.

Dolomite, the rock, is a class of natural sedimentary rock which contains a substantial quantity of the mineral dolomite. Its high magnesium carbonate content is its distinguishing characteristic. Petitioner's rock is composed, to the extent of more than three-quarters, of the mineral dolomite; and, as stated in our Findings of Fact, it has a magnesium carbonate content of from about 35 per cent to about 42 per cent.

The rock, dolomite, is quarried and sold extensively in industry and commerce. Some metallurgical firms use dolomite exclusively in the fluxing of nonmetallic materials, be-

The respondent presented no testimony respecting the character of petitioner's rock. In his brief, he neither affirmed nor denied that such rock was dolomite; but rather, he referred to it only in general terms, such as, "a rock consisting essentially of a mixture of calcium carbonate and magnesium carbonate."

We resolve the first question in favor of the petitioner. The rock involved is dolomite.

## II.

We turn now to the second question: Under the applicable statute, what rate or rates of percentage depletion are allowable in respect of the dolomite which petitioner quarried and sold in 1951?

Section 23 of the 1939 Code provides that in computing net income there shall be allowed as deductions:

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion * * *

For percentage depletion allowable under this subsection, see section 114 (b), (3) and (4).

Section 114 (b) (4), as amended by section 319 (a) of the Revenue Act of 1951, provides:

(A) * * * The allowance for depletion under section 23 (m) in the case of the following mines and other natural deposits shall be—

\*       \*       \*       \*       \*       \*       \*

(ii) in the case of * * * dolomite * * * 10 per centum

\*       \*       \*       \*       \*       \*       \*

of the gross income from the property during the taxable year * * *

The statute does not define "dolomite" or any of the other minerals mentioned therein; but the meaning which Congress intended to attach to them is shown by the legislative history. Such history may be resorted to as an aid to construction, when the meaning of the words of a statute are doubtful. *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523. The Senate Finance Committee, which added the provisions now contained in paragraphs (i), (ii), and (iii) of section

---

cause it has a lower melting point than some of the other fluxes, including the general limestones; and it thus makes possible a fluid slag of fairly low temperature.

Consulting geologists are frequently employed in industry to select and analyze rock for commercial uses. As the result, the term dolomite has come to have the same commonly accepted meaning in commerce and industry as it has among geologists.

The distinction between dolomite and limestone, in the classification of rocks, has been recognized in the following publications, some but not all of which were identified by the expert witnesses: "Industrial Limestones and Dolomites in Virginia: New River-Roanoke River District," by Byron N. Cooper; Bull. 62 (1944), Virginia Geological Survey, approved by Virginia Conservation Commission. "A Glossary of the Mining and Mineral Industry," by Albert H. Fay (1947 ed.), U. S. Department of Interior. "Dolomites and Limestones of Western Ohio," Bull. 42, 4th series, Ohio Geological Survey. "Rocks and Rock Minerals," by L. V. Pirsson and A. Knopf, (3d ed.), published by John Wiley & Sons, New York. "High Calcium Limestones in the Area Served by the Baltimore and Ohio Railroad," published by said railroad and containing a glossary of terms, in which the term "dolomite," as applied to rocks, is defined. Webster's New International Dictionary (2d ed., 1950).

114 (b) (4) (A), stated in its report: "The names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning." [4]   Also the Conference Report to the House, made after said provisions had been agreed upon in conference, said:

Under the conference agreement calcium carbonates are granted an allowance of 10 percent, while marble, which is a calcium carbonate, receives 5 percent. It is intended, in any case where a mineral is specifically provided for at a stated rate of percentage allowance, that the specific provision will govern over the allowance provided (whether higher or lower) for a more general classification.[5]

Applying these principles in the instant case, it is evident that, since petitioner's rock was dolomite within the commonly understood commercial meaning of that term (as we have heretofore found as a fact), and since "dolomite" is (as we have also found) a term of specific designation, as distinguished from "stone," "calcium carbonates," and "magnesium carbonates," which are terms of general classification, petitioner is entitled to the 10 per cent rate of percentage allowance which Congress has expressly provided for such mineral.

We find nothing in the applicable statute, or in its legislative history, which tends to show any intention of Congress that, where a mineral has therein been specifically provided for at a stated rate, such rate may be varied by the Commissioner in accordance with the end use to which the product is put by the taxpayer's customers.  An allowance for depletion has been recognized in our revenue laws since 1913, based on the theory that the extraction of minerals gradually exhausts the capital investment in the mineral deposit, and that a deduction from gross income should be allowed to compensate for such exhaustion.   All of the revenue acts enacted prior to 1954, in which such allowance was provided, speak in terms of the wells, mines, and natural deposits which are subject to the exhaustion, as distinguished from the products therefrom or the uses to which such products may be put by customers.

In the Revenue Act of 1926, there was introduced the new concept of percentage depletion.   Under this concept, the determination of the "reasonable allowance" for depletion of certain minerals, was removed from the control of the Commissioner; and such allowance was fixed by Congress itself at certain stated percentages of the gross income from the property.   One of the principal reasons for this change was the determination by Congress that administration of the then existing provisions for discovery depletion in respect of oil and gas had proved difficult; and that a change was desirable "in the interest of simplicity and certainty in administration." [6]

---

[4] S. Rept. No. 781, 82d Cong., 1st Sess., p. 38.

[5] H. Conf. Rept. No. 1213, 82d Cong., 1st Sess., p. 77.

[6] S. Rept. No. 52, 69th Cong., 1st Sess., pp. 17–18.

Subsequently, under the Revenue Acts of 1928, 1932, 1942, 1943, and 1951, the benefits of percentage depletion were extended to various other minerals and natural deposits. Although the history of these Acts indicates that one of the reasons for such extension was that certain minerals not previously entitled to percentage depletion were competing with other minerals receiving such benefit, there is no indication that after Congress had selected the additional minerals and had provided stated rates of depletion therefor, such rates were to be subject to variation by the Commissioner.

The allowances for percentage depletion under the 1939 Code are solely a matter of Congressional grace or policy. *Commissioner* v. *Southwest Exploration Co.*, 350 U. S. 308. The provisions of the statute here involved are specific and free from ambiguity. In such situation, there is no room for an interpretation, by the Commissioner or by the courts, which would vary (either upward or downward) the stated rates for specifically identified minerals, which Congress has provided.

What the respondent is here contending for is, in substance, to disregard entirely the express statutory provision, that dolomite shall be allowed percentage depletion at 10 per cent; to classify all of petitioner's product, in the first instance, under the general term of "limestone," for which no specific depletion rate has been provided and which therefore falls within the general classification of "stone," at the 5 per cent rate; and then to reclassify that portion of petitioner's product which was sold to Electro Metallurgical Company as "metallurgical limestone," at the 15 per cent rate, and to reclassify the portion sold for agricultural purposes as "calcium and magnesium carbonates," at the 10 per cent rate. Respondent argues, on brief, that such procedure would be administratively convenient, because "the petitioner and respondent's examining officers would only have to check invoices of the petitioner" in order to determine the applicable depletion rates. We find nothing in the statute which authorizes such disregard of the rate which Congress has provided.

None of the authorities which respondent has cited warrants a different conclusion. Treasury Decision 6031, 1953–2 C. B. 121 (which amended Regulations 111, section 29.23 (m)–5), specifically states that, effective as of January 1, 1951, a taxpayer may deduct under section 114 (b) (4) (A), depletion on dolomite in an amount equal to 10 per cent of the gross income from the property. The further provision thereof which relates to "Miscellaneous limestones and other calcium carbonate rocks" is, in our opinion, inapplicable to "dolomite," which is specifically provided for both in the statute and in said Treasury Decision. *Lavino* v. *United States*, (E. D., Pa., 1947) 72 F. Supp. 248, and G. C. M. 24185, 1944 C. B. 132, are not relevant. The G. C. M. was issued in 1944, and the District Court decision was entered in 1947;

whereas no statutory provision in respect to dolomite was enacted until 1951. Both of these authorities dealt with the tests to be applied in determining whether a particular mine is entitled to be classified as a metal mine. Revenue Ruling 700, 1955–2 C. B. 569 (which deals particularly with dolomite), was issued by respondent subsequent to the hearing and the filing of briefs in the instant case. It is, in substance, a restatement of the arguments which respondent presented on brief herein; and, for the reasons hereinabove stated, we think it is erroneous. Finally, as regards section 613 of the 1954 Code, to which respondent has made incidental reference, the House Conference Report in respect to the same, states:

The action on this section applies only to years subject to the 1954 Code. No inference can be drawn from the reclassification of certain minerals and other actions as to the meaning of present law.[7]

We hold that petitioner's contentions respecting the construction and application of the statute here involved should be approved. Subject to the limitation contained in the last sentence of section 114 (b) (4) (A) of the 1939 Code, as amended, petitioner is entitled to an allowance for depletion, in respect of all the rock which it extracted and sold from its Klotz quarry in the year 1951, in an amount equal to 10 per cent of its gross income from the property during said year.

*Decision will be entered under Rule 50.*

---

[7] H. Conf. Rept. No. 2543, 83d Cong., 2d Sess., p. 52.