*Decisions will be entered for the respondent.*

SPENCER QUARRIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57489. Filed November 29, 1956.

*Harry Thom, Esq., Frederick R. Shearer, Esq.*, and *Hugo J. Melvoin, Esq.*, for the petitioner.
*Thomas C. Cravens, Esq.*, for the respondent.

394

OPINION.

FISHER, *Judge:* The issue here presented arises over the construction and application of the provisions of the Internal Revenue Code, as amended, which control the rates of percentage depletion for petitioner's product. The material provisions of the statute are set forth in footnote 1.[1]

---

[1] Internal Revenue Code of 1939 :

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\* \* \* \* \* \* \*

(m) DEPLETION.—In the case of mines, oil, and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case ; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

For percentage depletion allowable under this subsection, see section 114 (b), (3) and (4).

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND FOR CERTAIN OTHER MINES AND NATURAL MINERAL DEPOSITS.—

(A) In General.—The allowance for depletion under section 23 (m) in the case of the following mines and other natural deposits shall be—

(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite, marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride and bromine, 5 per centum,

(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum.

(iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona,

Petitioner's position is that, when Congress provided in section 114 (b) (4) (A) (iii) that the allowance for depletion "shall be * * * in the case of quartzite * * * 15 per centum * * * of the gross income from the property during the taxable year" it intended the word "quartzite" to mean a particular class of natural deposit which is commonly and commercially known by that name; that the deposits here involved were of such a class; and that percentage depletion should be allowed in respect of all of such deposits of petitioner at the uniform rate of 15 per cent, irrespective of the end uses to which its products were put by its customers.

Respondent concedes on brief that petitioner is entitled to a 15 per cent rate of depletion on all of the sales of its deposits through National Foundry Sand Co. in the years in question, the amounts of which are set forth in our findings. Respondent makes this concession because the end use of the deposits so sold was for refractory purposes, to which quartzite is specially adapted.

As to all other sales, in which the end uses were otherwise, as described in our findings, respondent's position is that employment of the end-use test is inherently necessary in order to effectuate the purpose of Congress in enacting section 114 (b) (4) (A) wherein several natural deposits are specifically named with different rates of percentage being assigned, but where, according to respondent's contention in the instant case, such natural deposit may qualify under more than one category and rate of depletion.

Respondent does not deny that the deposits in question were quartzite within the generally accepted meaning of that term. He argues that it is not quartzite within the meaning of the statute solely on the basis of his theory of end use. In support of this view, he contends that in the case of all of petitioner's sales in which he would allow only a 5 per cent depletion rate under section 114 (b) (4) (A) (i) instead of 15 per cent under section 114 (b) (4) (A) (iii), petitioner is competing with other quarries that are quarrying common stones and other natural deposits in that category. He asserts that Congress did not intend that such a competitive advantage be given petitioner, and that the end-use test is necessary and must, therefore, have been intended.

We cannot accept respondent's view. In *Virginian Limestone Corporation*, 26 T. C. 553, we considered, in principle, the identical is-

---

bentonite gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, *quartzite*, diatomaceous earth, metallurgical grade limestone, chemical grade limestone, and potash, 15 per centum, and

(iv) in the case of sulfur, 23 per centum,

of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect to the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph. [Emphasis added.]

sue. That case involved dolomite (entitled to a 10 per cent rate under section 114 (b) (4) (A) (ii)) and the surrounding circumstances were the same. There we found as a fact that the rock in question was dolomite within the commonly and commercially accepted meaning of that term. We have made a like finding here that the deposits quarried were quartzite within its commonly and commercially accepted meaning. There the respondent did not deny the rock was dolomite, and here he does not deny the deposits were quartzite. In *Virginian Limestone Corporation, supra,* the history of the legislation which added paragraphs (i), (ii), and (iii) to section 114 (b) (4) (A) was carefully considered and it was clearly demonstrated that the names of the various enumerated items were intended to have their commonly understood commercial meaning, and further that it was intended, in any case where an item was specifically provided for at a stated rate of percentage allowance, the specific provision would govern over the allowance provided (whether higher or lower) for a more general classification. Cf. *National Lead Co.*, 23 T. C. 988, reversed on other grounds 230 F. 2d 161, certiorari granted 351 U. S. 981.

As to the end-use principle, we said in *Virginian Limestone Corporation, supra,* at page 560:

We find nothing in the applicable statute, or in its legislative history, which tends to show any intention of Congress that, where a mineral has therein been specifically provided for at a stated rate, such rate may be varied by the Commissioner in accordance with the end use to which the product is put by the taxpayer's customers. An allowance for depletion has been recognized in our revenue laws since 1913, based on the theory that the extraction of minerals gradually exhausts the capital investment in the mineral deposit, and that a deduction from gross income should be allowed to compensate for such exhaustion. All of the revenue acts enacted prior to 1954, in which such allowance was provided, speak in terms of the wells, mines, and natural deposits which are subject to the exhaustion, as distinguished from the products therefrom or the uses to which such products may be put by customers.

In the Revenue Act of 1926, there was introduced the new concept of percentage depletion. Under this concept, the determination of the "reasonable allowance" for depletion of certain minerals, was removed from the control of the Commissioner; and such allowance was fixed by Congress itself at certain stated percentages of the gross income from the property. One of the principal reasons for this change was the determination by Congress that administration of the then existing provisions for discovery depletion in respect of oil and gas had proved difficult; and that a change was desirable "in the interest of simplicity and certainty in administration."

Subsequently, under the Revenue Acts of 1928, 1932, 1942, 1943, and 1951, the benefits of percentage depletion were extended to various other minerals and natural deposits. Although the history of these Acts indicates that one of the reasons for such extension was that certain minerals not previously entitled to percentage depletion were competing with other minerals receiving such benefit, there is no indication that after Congress had selected the additional minerals and had provided stated rates of depletion therefor, such rates were to be subject to variation by the Commissioner.

We think the provisions of the statute are specific and free from ambiguity. Under the circumstances, there is no room for interpretation which would permit the Commissioner to vary the stated rates either upward or downward.

In view of the thorough consideration given to the problem in *Virginian Limestone Corporation, supra,* we think further discussion is unnecessary except to add that we have reviewed *E. J. Lavino & Co. v. United States,* 72 F. Supp. 248 (E. D., Pa., 1947), and find it as clearly inapplicable to quartzite as it is to dolomite.

We hold, therefore, that the deposits here in issue, quarried and sold by petitioner, were quartzite within the meaning of section 114 (b) (4) (A) (iii) and that the applicable depletion rate is 15 per cent.

*Decision will be entered under Rule 50.*