IOWA LIMESTONE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59519.   Filed July 25, 1957.

*James Evans Cooney, Esq.*, for the petitioner.
*Marvin E. Hagen, Esq.*, for the respondent.

OPINION.

LeMire, *Judge:* Petitioner is engaged in the quarrying and processing of limestone, and computed its allowance for depletion on the basis of income derived from the sale of its finished product.

The respondent relying primarily on the decision in *Dragon Cement Co.* v. *United States*, 144 F. Supp. 188, contends that all the processes beyond the secondary crushing in the hammermills were not ordinary treatment processes within the meaning of section 114 (b) (4) (B) of the Internal Revenue Code of 1939. Petitioner contends that the additional processes of fine grinding or pulverization and the application of heat to reduce the moisture content of the limestone were also ordinary treatment processes to produce its commercially marketable product.

It appears from the record that petitioner chemically treated some 13.72 per cent of its limestone with iodine to meet the specifications of certain of its customers.

The blending of chemicals would not constitute ordinary treatment processes. *Black Mountain Corporation*, 21 T. C. 746. However, for the purpose of determining its depletion deduction, the gross sales from such chemically treated limestone have not been included in the gross income from mining. Furthermore, petitioner, on brief, states that it is not claiming the cost of bags as a part of its mining costs for purposes of depletion.

In the recent cases of *American Gilsonite Co.*, 28 T. C. 194, and *Riverton Lime & Stone Co.*, 28 T. C. 446, this Court refused to follow the *Dragon Cement Co.* decision, which has since been reversed, 244 F. 2d 513, and has followed its decision in *International Talc Co.*, 15 T. C. 981. See also, *United States* v. *Cherokee Brick & Tile Co.*, 218 F. 2d 424; *United States* v. *Merry Brothers Brick & Tile Co.*, 242 F. 2d 708, certiorari applied for.

We think the foregoing decisions are decisive and controlling on the first issue presented in the instant case. To reiterate the reasons

basing those decisions would serve no purpose other than to extend this Opinion.

We, therefore, have found as a fact that all the processes applied by petitioner to its limestone, except the blending of chemicals and the bagging, were ordinary treatment processes normally applied by mine owners to obtain the commercially marketable product. We sustain petitioner on this issue.

Thus holding, the applicable rate of depletion must be determined. Petitioner contends that its product is chemical grade limestone and that the statutory rate is 15 per cent. The respondent argues that petitioner's product is pure calcium carbonate for which the statutory rate is 10 per cent. The pertinent statutory provisions are contained in section 114 (b) (4) (A) (ii) and (iii) of the Code.

The statute does not define what is meant by the term "chemical grade limestone." This Court has adopted the general rule of statutory construction that the words and terms used in a revenue act are to be given their ordinary, obvious, and generally accepted meanings. *International Talc Co., supra.*

The respondent relies upon Regulations 111, section 29.23 (m)–5, which provide in part material hereto, that the indicated mineral shall have the following meaning: "Limestone, chemical grade—Limestone used or sold for use in the chemical trades."

We have heretofore refused to sustain the validity of the "end use" test adopted by the respondent. *Virginian Limestone Corporation,* 26 T. C. 553; *Spencer Quarries, Inc.,* 27 T. C. 392.

The record shows that limestone which is at least 95 per cent pure, free from toxic impurities, and containing not more than 1 per cent moisture, is known in industry and commerce as chemical grade limestone. The product of petitioner meets such specifications. We therefore conclude that petitioner's limestone product is chemical grade limestone within the statutory term, and petitioner is entitled to compute its percentage depletion deduction at the prescribed rate of 15 per cent, limited to the extent of 50 per cent of the net income from the property.

Finally, petitioner waives any claim to a percentage depletion deduction with respect to the taxable year 1950. However, it claims, and respondent concedes, that petitioner is entitled to an unused excess profits tax credit carryback from 1951 to the year 1950. The amount of such credit will be computed under Rule 50.

*Decision will be entered under Rule 50.*