**LEHIGH PORTLAND CEMENT COM-PANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. Nos. 23767, 24445, 25256.

United States District Court
E. D. Pennsylvania.

Oct. 30, 1961.

Arthur R. Littleton, Philadelphia, Pa., Joseph B. Brennan, Atlanta, Ga., Morgan Lewis & Bockius, Philadelphia, Pa., Milbank, Tweed, Hope & Hadley, New York City, Sutherland Asbill & Brennan, Atlanta, Ga., for plaintiff.

Joseph S. Lord, III, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

These are actions for refund of corporate income tax for the years 1951 through 1955. Taxpayer manufactures cement. After a long trial, focused largely on other questions, the issues have been winnowed until only one remains: whether the stone taken from most of the taxpayer's quarries is chemical grade limestone or whether it is calcium carbonates.

Section 114(b) (4) (A) of the Internal Revenue Code of 1939, as amended by Section 319(a) of the Revenue Act of 1951, 26 U.S.C.A. § 114(b) (4) (A), fixes the percentage depletion rate for chemical grade limestone at 15% and that for calcium carbonates at 10%. The taxpayer contends that its limestone is chemical grade and that the 15% rate applies. The government takes issue with this contention.

The crux of the issue is the meaning of the statutory phrase "chemical grade limestone." The statute does not define it. Two successive Treasury Regulations construed the phrase.

The first of these was § 39.23(m)–5 (b), published as T.D. 6031, 1953–2 Cum. Bull. 120, 123–124, which stated:

"(a) In the case of the mines or other natural deposits listed here-

Inafter, a taxpayer may deduct for depletion under section 114(b) (4) (A) amounts equal to the following percentages of the gross income from the property:

"Mine or deposit        Percent

\*     \*     \*     \*     \*

"Calcium carbonates        10

\*     \*     \*     \*     \*

"Limestone:

"Chemical grade        15

"Metallurgical grade        15

\*     \*     \*     \*     \*

"(b) For the purposes of this section, the minerals indicated below shall have the following meanings:

\*     \*     \*     \*     \*

"Limestone, chemical

grade ............Limestone used or sold for use in the chemical trades."

This regulation also contained the following:

"Calcium carbonates......Miscellaneous limestones and other calcium carbonate rocks (not specifically provided for at a 5 per cent or 15 per cent rate of percentage allowance) such as cement rock and limestone used or sold for use in soil treatment. This classification does not include rock or minerals used or sold for use as ballast, road making, concrete aggregates, or other purposes for which chemical composition is not a major requirement."

This first regulation, determining the classification of chemical grade limestone by the use to which it was to be put, had hard going in the Tax Court, which refused to follow it in Iowa Limestone Company v. Commissioner, 28 T.C. 881, saying, p. 884:

"We have heretofore refused to sustain the validity of the 'end use' test adopted by the respondent. Virginian Limestone Corporation, 26

T.C. 553; Spencer Quarries, Inc., 27 T.C. 392."

In the Virginian Limestone case the court impaled the first regulation on this sharp point:

"We find nothing in the applicable statute, or in its legislative history, which tends to show any intention of Congress that, where a mineral has therein been specifically provided for at a stated rate, such rate may be varied by the Commissioner in accordance with the end use to which the product is put by the taxpayer's customers," 26 T.C. at p. 560.

In the Virginian Limestone and Spencer Quarries cases there was a general uniformity in the rock[1] taken from each quarry, but the Commissioner sought to apply varying depletion rates in accordance with the various customers to whom the rock was sold.

After these three defeats in the Tax Court, paragraph (b) of the Regulation, § 39.23(m)–5, was amended November 29, 1960, T.D. 6510, 1960-2 Cum.Bull. 458, to read:

"(b) For the purpose of identifying the minerals listed in paragraph (a) such minerals shall be given their commonly understood commercial meanings. If a mineral of a taxpayer is within both a specific and a general mineral classification listed in paragraph (a), such mineral shall be considered to fall within the more specific classification. If the name of a mineral listed in paragraph (a) has no commonly understood commercial meaning but the name implies a particular use or uses, such mineral is to be defined in terms of such use or uses. Certain of the minerals listed in paragraph (a) are defined below in accordance with the foregoing criteria set forth in this paragraph:

\*     \*     \*     \*     \*

"Calcium carbonates—Miscellaneous limestones and other calcium

---

1. In one case dolomite and in the other quartzite.

carbonate rocks (not specifically provided for at a 5 percent or 15 percent rate of percentage allowance) which are used or sold for use for purposes for which the calcium carbonate content is a major requirement. For example, the term 'calcium carbonates' includes limestone which is not of chemical or metallurgical grade and which is used or sold for use for cement manufacture or soil treatment. However, the term 'calcium carbonates' does not include any carbonate mineral which is identifiable as dolomite, marble, stone, oyster shells, or clam shells with the commonly understood commercial meaning of those terms.

\* \* \* \* \*

"Limestone, chemical, and metallurgical grade—Limestone which contains a calcium carbonate and magnesium carbonate content totaling 95 percent or higher by weight. For this purpose, the term 'limestone' does not include any carbonate mineral which is identifiable as a mineral falling within a more specific classification such as dolomite, marble, oyster shells, or clam shells."

It is extremely difficult to determine exactly what Congress meant by the term "chemical grade limestone." In the legislative hearings there is testimony [2] to the effect that limestone for metallurgical or chemical purposes is of infrequent occurrence and constitutes "an insignificant proportion of all limestone products."

There is also the statement of the Senate Finance Committee that "the names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning." [3]

The Tax Court has had its own troubles with the term chemical grade limestone, saying in one case: [4]

"The record shows that limestone which is at least 95 per cent pure, [i. e. having 95% carbonates] free from toxic impurities, and containing not more than 1 per cent moisture is known in industry and commerce as chemical grade limestone,"

and in another: [5]

"There apparently is no generally accepted and commonly understood commercial meaning of metallurgical or chemical grade limestone."

Although both the old and the new regulations classify cement rock as calcium carbonates which as such are entitled only to the lower rate of depletion, it is taxpayer's contention that its limestone is chemical grade for the reason that it is used in a chemical industry, to wit, the manufacture of cement, in which the stone undergoes changes in composition to become cement.

From the testimony of plaintiff's expert Dr. Herbert F. Kriege it appears that the term "chemical grade limestone" is not limited in its meaning to limestone having 95% or more calcium carbonate or total carbonates, and that the term includes limestone suitable for and actually used for the manufacture of cement. In this connection, Exhibit E to the Stipulation filed September 15, 1959, demonstrates that there is a wide variation in the calcium carbonate and magnesium carbonate content of the limestone which plaintiff uses to manufacture cement. [6] At Sandt's Eddy, Pennsylvania, the calculated total carbonates in the limestone quarried by plaintiff for making cement fall to a low of: calcium carbonate 74%,

2. 1 House Hearings, Revenue Revision of 1950, p. 333 et seq.; 3 House Hearings, Revenue Revision of 1951, p. 1553 et seq.; 2 Senate Hearings, Revenue Act of 1951, p. 872 et seq.

3. Senate Report No. 781, 82nd Congress, 1st Session, p. 38.

4. Iowa Limestone Co. v. Commissioner, 28 T.C. 881, 884.

5. Halquist v. Commissioner, 33 T.C. 304, 321.

6. Excluding the stone quarried at Mason City, Iowa, and Union Bridge, Maryland, which the government concedes to be chemical grade limestone.

**880**

magnesium carbonate 5%. In addition, plaintiff's expert Mr. James L. Todd used the term "chemical stone" to describe limestone containing between 85% and 92% calcium carbonates. This stone is taken from two strata of a quarry of the Solvay Process Division of Allied Chemical Corporation at Jamesville, near Syracuse, New York, and used in the manufacture of soda ash, which is a chemical industry.

The testimony of the government's principal expert was weakened on cross-examination. It was weakened particularly by his statement that although he would desire to call chemical-grade limestone something having 97 or 98% total carbonates, "The reason I have a 95-percent figure [of total carbonates to define chemical grade limestone] is because it is the proposed policy of the Internal Revenue Service [since embodied in the new regulation] to use a 95-per-cent figure." This is an attempt to adjust facts to a [proposed] regulation, and casts serious doubts upon the testimony of the witness.

■ While the term chemical grade limestone indicates a type of limestone of a higher degree of purity than its common commercial form, it appears that the new regulation which requires a calcium carbonate and magnesium carbonate content of 95% or more, in the light of the evidence in the present case, is " * * * an attempted addition to the statute of something which is not there. As such the regulation can furnish no sustenance to the statute," United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 394 (1957). The new regulation, therefore, will not be followed.

■ I find as a fact that taxpayer's limestone at all quarries over which a dispute exists is chemical grade limestone. Taxpayer is entitled to percentage depletion at the rate of 15% on all such limestone. Judgment will be entered in its favor.

Plaintiff may submit an order in accordance with this opinion.