**The H. FRAZIER COMPANY, Inc.**
v.
**The UNITED STATES.**
No. 100–59.

United States Court of Claims.
May 9, 1962.

**522**

Harry Frazier, III, Richmond, Va., for plaintiff. Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on the briefs.

John F. Palmer, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, and Philip R. Miller, Washington, D. C., on the brief.

LARAMORE, Judge.

This is a suit for refund of income tax allegedly overpaid by the taxpayer for the year 1951.

Plaintiff, a West Virginia corporation, operates a limestone quarry for the production of crushed limestone which it sells for use as railroad ballast.

This litigation grew out of a controversy between plaintiff and the Internal Revenue Service concerning the applicable rate of depletion to which plaintiff was entitled under 26 U.S.C. (I.R.C.1939) § 114(b) (4) (1952 Ed.). The defendant does not dispute the fact that plaintiff is entitled to a deduction for depletion of a natural resource, but it does dispute the rate claimed by plaintiff. The Internal Revenue Code of 1939, as amended, in its relevant parts provides:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*

"(m) Depletion.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

\*     \*     \*     \*     \*     \*

"§ 114. Basis for depreciation and depletion.

\*     \*     \*     \*     \*     \*

"(b) Basis for depletion   .

\*     \*     \*     \*     \*     \*

"(4) Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits

"(A) In general. The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

"(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite, marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride, and bromine, 5 per centum,

"(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum.

"(iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, quartzite, diatomaceous earth, metallurgical grade limestone, chemical grade limestone and potash, 15 per centum, and

\*　\*　\*　\*　\*　\*

"(iv) in the case of sulfur, 23 per per centum,

of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph."

The general issue presented by the parties is a determination of the proper rate allowable under the Code provisions. To establish this rate, we must determine precisely what deposit the plaintiff is exhausting since the concept of allowing a deduction for depletion is premised on the theory that a capital asset is consumed in the production of income through the severance of a mineral deposit. Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277.

The plaintiff contends that the product of its quarry is calcium carbonate, depletable at 10 percent within the meaning of section 114(b) (4) (A) (ii). Conversely, the Government argues that plaintiff is entitled only to the five percent depletion rate allowable for "stone" as provided by section 114(b) (4) (A) (i).

The Government, in seeking to assist in properly identifying the mineral, urges us to hold valid the Treasury regulations promulgated pursuant to this section of the Code. Treas.Reg. 111, § 29.23 (m)–5 (as amended by T.D. 6031, 1953–2 Cum.Bull. 120). This bulletin established what is commonly known as the "end-use" test. The Internal Revenue Service has occasionally taken the position that the "end-use" test is inherently necessary to effectuate the purpose of Congress in enacting section 114(b) (4) (A). Spencer Quarries, Inc., 27 T.C. 392. At other times the Service has taken the position that the "end-use" test contained in the Treasury regulations is a reasonable and common sense approach in the administration of a statute. Iowa Limestone Co., 28 T.C. 881. The Government's position has yet to be sustained. In Virginian Limestone Corp., 26 T.C. 553, the Tax Court expressly rejected the "end-use" test, stating at page 560:

"We find nothing in the applicable statute, or in its legislative history, which tends to show any intention of Congress that, where a mineral has therein been specifically provided for at a stated rate, such rate may be varied by the Commissioner in accordance with the end use to which the product is put by the taxpayer's customers."

Accordingly, the Tax Court then found:

> "In such situation, there is no room for an interpretation, by the Commissioner or by the courts, which would vary (either upward or downward) the stated rates for specifically identified minerals, which Congress has provided." [p. 561]

■ If plaintiff's product is calcium carbonate, then the same reasoning applied by the courts in Virginian Limestone Corp., supra; Spencer Quarries, Inc., supra; Iowa Limestone Co., supra; Wagner Quarries Co. v. United States, D.C., 154 F.Supp. 655, aff'd 6 Cir., 260 F. 2d 907; Blue Ridge Stone Corp. v. United States, D.C., 170 F.Supp. 569, would apply to the instant case. These cases stand for the proposition that the commonly understood commercial meaning of the mineral named, and not the "end-use" test, is controlling. The Internal Revenue Service no longer follows the "end-use" test with respect to dolomite and quartzite. Therefore, we can see no reason to apply that test to "calcium carbonates." In effect, what the defendant is urging is a determination that if "calcium carbonates" are used in a manner that emphasize the physical properties rather than the chemical properties of the product, we should disregard entirely the express statutory provision. The defendant urges this despite the fact that Congress specifically provided a depletion allowance of 10 percent for "calcium carbonates" because this mineral was being exhausted without regard to how it was being used. We agree with the conclusion reached in the line of authority cited above, i. e., when a mineral has been specifically provided for at a stated rate, such rate may not be varied by the Commissioner owing to the use by which the product is put by the taxpayer's customers.

■ Up to this point we have proceeded on the assumption that the plaintiff's products were "calcium carbonates."

The Government contends that we might hold the "end-use" test to be invalid but that alone would not be dispositive of this case. This is certainly true, for we have the additional problem, not involved in any of the prior cases, of determining what the product is that the plaintiff is mining. The Government avers that the terms "stone" and "calcium carbonates" are mutually exclusive, and since "limestone" by definition is clearly "stone" the rate applicable is five percent. The plaintiff concedes, as it must, that its product is "stone," but it contends that it is more specifically calcium carbonate. The parties, then, agree that the plaintiff's product is stone. Although all limestone is "stone," not all "stone" is limestone. The term "stone" is more general than the term limestone. If Congress intended the term calcium carbonate to be synonymous with ordinary limestone, it then follows that calcium carbonate is a more specific provision than "stone," and plaintiff is entitled to a depletion allowance at the rate of 10 percent. The legislative history fully supports the rule that a more specific provision governs over a more general classification. The House Conference Report provides:

> "Under the conference agreement calcium carbonates are granted an allowance of 10 percent, while marble, which is a calcium carbonate, receives 5 percent. It is intended, in any case where a mineral is specifically provided for at a stated rate of percentage allowance, that the specific provision will govern over the allowance provided (whether higher or lower) for a more general classification." [1]

The term "calcium carbonates" is not defined in the statute. The test adopted by Congress and approved by the courts is whether the product meets the commonly understood commercial meaning of the substance in respect to which the depletion was granted. The Senate Finance Committee, which added the provisions now contained in paragraphs (i),

1. H.Conf.Rep. No. 1213, 82d Cong., 1st sess., p. 77.

(ii), and (iii) of section 114(b) (4) (A), stated in its report:

"The names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning." [S. Rept. No. 781, 82d Cong., 1st sess., p. 38, U.S.Code Congressional and Administrative News 1951, p. 1781]

■ In the instant case the evidence fails to show that the term "calcium carbonates" has a commonly understood commercial meaning. Absent this showing, it is the duty of the court to arrive at a reasonable interpretation of the intent of Congress in employing that term. Wagner Quarries v. United States, supra, at 662 of 154 F.Supp.

At least one court expressed the view that "calcium carbonates" means ordinary limestone. Riddell v. Victorville Lime Rock Co., 61–2 U.S.T.C., ¶ 9565 (*dictum*). However, that court was concerned with the meaning of "chemical grade limestone" and is of little authority here.

The evidence clearly supports a finding that plaintiff's limestone contained at least 85 percent calcium carbonate. The evidence further shows that plaintiff's product was suitable for use in the manufacturing of cement or for agricultural purposes. Since we have held the "end-use" test to be an unreasonable exercise of the Commissioner's authority, this suggests, in defendant's view at least, that plaintiff's product is actually calcium carbonate, since the Commissioner's own regulations provide:

"* * * Calcium carbonates— Miscellaneous limestones and *other calcium carbonate rocks* * * *. * * * the term 'calcium carbonates' include limestone which is not of chemical or metallurgical grade and which is used or sold for use for cement manufacture or soil treatment * * *." [Italic supplied] Treasury Regulations 111, § 29.23(m)–5, as amended by T.D. 6510, 1960–2 Cum.Bull. 458.

To classify minerals solely by their end use is one thing, to reach a reasonable interpretation of what Congress intended is another, even though the latter may be shaped and influenced in some degree by the potential use. Riddell v. California Portland Cement, 61–2 U.S.T.C., ¶ 9711; Wagner Quarries v. United States, 6 Cir., 260 F.2d 907.

■■ Limestone, in petrography, is a rock consisting essentially of calcium carbonate ("calcium of lime"). 14 Encyc. Brit. 131 (1957 Ed.). Any rock consisting of at least 50 percent calcium carbonate may be properly termed limestone. Limestones are used for a variety of economic purposes. They are "burnt" for lime, or when argillaceous, hydraulic lime; when intimately mixed with sandy clay and burnt, they yield portland cement; in their purer forms they are widely used in the chemical, glass, soap-making and silicate industries; they serve as fluxes in the preparation of basic steel; as well as building stones and, as here, road stones. If "calcium carbonates" do not include limestone, we can give no meaning to that term as used in the statute. Calcium carbonate never occurs in nature in its pure form. The defendant argues that it occurs in an almost pure form in Iceland Spar. As the name indicates, this mineral is found in Iceland, its source is virtually exhausted, and the total world production probably equals one carload lot, and by the defendant's admission this would qualify as "chemical grade limestone" entitled to an allowance for depletion at the rate of 15 per centum. We do not believe that it could reasonably be inferred that this is the mineral Congress intended to be known as calcium carbonate. The defendant further contends that Congress intended the term to apply to calcite and aragonite. The chemical composition of calcite and aragonite is the same as calcium carbonate, i. e., $CaCO_3$, but the only way to obtain pure calcite or aragonite is through a refining process. They are derived through the exhaustion of a natural deposit. This natural deposit may be limestone, marble, oyster shells or clam shells. Congress specifically provided for marble and shells, which are

"calcium carbonates," an allowance of 5 per centum (H.Conf.Rep. No. 1213, 82d Cong., 1st sess., p. 77). We think it is inconceivable that Congress would not have provided specifically for limestone, which is the most common source of calcium carbonate, if it had intended to remove limestone from the classification of "calcium carbonates." We conclude that Congress intended the term "calcium carbonates" to include limestone. Thus plaintiff's product comes under the express provision of the statute allowing for depletion at a rate of 10 per centum.

For the reasons indicated, it is determined that plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and DURFEE and WHITAKER, Judges, concur.