UNITED STATES of America,
Appellant,

v.

FANNIN INVESTMENT COMPANY,
Inc., Appellee.

No. 19911.

United States Court of Appeals
Fifth Circuit.

Sept. 17, 1963.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., Melva Graney, Michael Mulroney, Attys., Dept. of Justice, Washington, D. C., for appellant.

John W. Wilcox, Jr., Wilson, Branch, Barwick & Vandiver, Atlanta, Ga., for appellee.

Before CAMERON and WISDOM, Circuit Judges, and DE VANE, District Judge.

CAMERON, Circuit Judge.

The question on appeal is whether the court below, sitting without a jury, was in error in concluding that the product mined by appellee "was chemical grade and metallurgical grade limestone within the commonly understood commercial meaning of said term and was not marble or dolomite."

The depletion rate for marble is 5%; [1] for dolomite 10%, [2] and for chemical or metallurgical limestone 15%.[3] The material involved here, mined during the 1953 tax year, is conceded by the government to be chemical or metallurgical grade limestone; but the government argues that it is also marble or, in the inconsistent alternative, dolomite, and should be so classified.[4]

The record indicates, and the parties agree, that limestone is a broad term encompassing all sedimentary rock containing calcium carbonate. Chemical or met-

1. 26 U.S.C.A. § 114(b) (4) (A) (i) (I.R.C. 1939).

2. 26 U.S.C.A. § 114(b) (4) (A) (ii) (I.R.C.1939).

3. 26 U.S.C.A. § 114(b) (4) (A) (iii) (I.R.C.1939).

4. According to the Regulations, "such minerals shall be given their commonly understood commercial meanings. If a mineral of a taxpayer is within both a specific and a general classification listed * * * such mineral shall be considered to fall within the more specific classifi-

allurgical grade limestone is limestone which contains a high degree of magnesium and calcium carbonate.[5] "Pure" or "mineral" dolomite is a mineral composed of one molecule of calcium carbonate to one molecule of magnesium carbonate ($CaCo_3.MgCo_3$) and is, by weight, 54.3% calcium carbonate and 45.7% magnesium carbonate. Marble, in a geologic sense, is limestone which has been altered by pressure to a crystalline state, i. e., "metamorphosed."

In other words, all marble and all dolomite is limestone; but not all limestone is either marble or dolomite. Some marble is crystallized dolomite. Dolomitic rock is a carbonate rock which has a substantial amount of magnesium carbonate, and "pure" dolomite is calcium carbonate and magnesium carbonate in equal molecular quantities.

There is no dispute as to the composition of the material in question. The parties agree that the question, however, is: what is the "commonly understood commercial meaning" [6] of the terms "dolomite" and "marble;" or, more properly, the question of fact here is: within what classification are the materials to fall, this choice turning on the commonly understood commercial meaning of the classifying terms.

The government argues that, before reaching that factual question, we must decide whether the court below used the proper standard in choosing the classification:

"Thus the question of whether the evidence supports the court's finding

is not important as to the first inquiry [whether the proper standard was used]. Rather, it must here appear that the court (1) correctly recognize that the statute permits dual classification but requires that the most specific classification must apply and (2) in the light of the applicable Regulations and general pattern of the evidence, the court attempted to determine the most specific classification. Only then does the question become whether the evidence supports the court's identification of the taxpayer's deposit.

"The court's opinions here provide only an identification of the taxpayer's deposit. There is no direct indication in the record that the court considered what we believe to be the first inquiry. It is thus open to this Court (as it would be in the consideration of any other question of law) (1) to consider the dual classifications permitted by the statute and (2) to determine the specific classification required by the statute applicable here, to arrive at a conclusion as to whether the lower court correctly applied the statutory standard to this case. We urge that it did not, because the applicable statutory standard is the narrowest classification with which the taxpayer's deposit may be identified—marble."

In rejecting the contentions that the material was either marble or dolomite, the court below did not reach the question, which classification is the ost spe-

cation * * *. T.R. 118 (1939 Code) § 39.23(m)–5(b). This principle was recently recognized by this court in W. D. Haden Co. v. Commissioner, 5 Cir., 321 F.2d 169.

5. It was stipulated that the material mined by taxpayer averaged 57.7% calcium carbonate and 38.0% magnesium carbonate, giving a combined total carbonate content of 95.7%.

6. Legislative history indicates that "The names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning." S.Rep. No. 781, 82nd Cong. 1st Sess. p. 38; 2 U.S.Code Cong. and Adm.Service, pp. 2006, 2008. See, e. g., Vulcan Materials Co. v. Sauber, 1962, 7 Cir., 306 F.2d 65; Erie Stone Co. v. United States, 6 Cir., 304 F.2d 331; Riddell v. Victorville Lime Rock Co., 1961, 9 Cir., 292 F.2d 427; Riddell v. California Portland Cement Co., 1962, 9 Cir., 297 F.2d 345; Blue Ridge Stone Corp. v. United States, 1959, W.D.Va., 170 F. Supp. 569; and Virginian Limestone Corp. v. Commissioner, 1956, 26 T.C. 553 and T.R. 118 (1939 Code) § 39.23(m)–5(b), which agree that such is the test.

cific. The government's suggestion that we must test the court's finding by making *de novo* the factual determination is spurious. Its statement that "the applicable statutory standard is the narrowest classification with which the taxpayer's deposit may be identified— marble" assumes as a fact the question to be answered or the factual determination to be made. And we must test that determination by the court below by the standard set out in the Rules, Rule 52(a) F.R.Civ.P., 28 U.S.C.A. The question is whether the findings of fact of the court below are clearly erroneous. See, e. g. United States v. Wagner Quarries Co., 1958, 6 Cir., 260 F.2d 907.

■ Inasmuch as the court below found as a matter of fact that the material was not dolomite or marble, pretermitting the question of specificity, neither need we decide whether these classifications are more specific than chemical or metallurgical grade limestone.[7] Nor must we decide whether marble is a more specific term than dolomite. In effect, the only question is whether the court below was clearly in error in deciding that the material was *not* marble or dolomite, according to their "commonly understood commercial meanings."

The record is replete with evidence that, within the trade, the "commonly understood *commercial* meaning" of the term marble is crystallized limestone or carbonate rock which will take a polish, *and which is suitable for use as dimension stone.* It is undisputed that the material mined by the taxpayer was *not* suitable for use as dimension stone and that it is suitable for use only as terrazzo chips, roofing chips, etc. The stone involved in this case is in a fractured form as it lies in the ground and thus is incapable of being used as dimension, or building, stone. The geologic explanation of this fact is that, in the distant past—hundreds of thousands, or perhaps millions, of years ago—changes in the

structure of the earth shattered the then solid beds of stone and ruined the material forever for structural purposes. Although chemically and geologically it is made up of the same matter as marble, it is no longer marble in the commercial sense of the word, according to the findings of fact of the court below, based on ample evidence. This view was accepted by the Ninth Circuit in Riddell v. Victorville Lime Rock Co., 1961, 292 F.2d 427, 433:

"It is appellant's argument that since petrologically marble is limestone which has been recrystallized through metamorphism resulting in a crystalline limestone which is physically distinguished from ordinary limestone by its crystalline and granular texture, that appellee's deposit is marble because of the district court's finding that the appellee's deposit was 'a medium to coarse grained, crystalline, metamorphosed, friable limestone' unless the commonly understood commercial meaning of 'marble' is different from its petrological meaning.

"*The record reflects that appellee's deposit is not suitable for the production of dimension marble.* Appellant asserts that such deposit is suitable in crushed form for terrazzo, marble mosaic, and so forth, and that marble, as commonly understood commercially, includes crushed marble. There is substantial evidence in the record that appellee's deposit is too fractured, stained, unsound, and too irregular in grain size to be classified as marble in the commonly understood commercial sense of that term. Appellant asserts that * * it must be presumed that it was the intent of Congress to include crushed marble within the commonly understood commercial meaning of the term 'marble.' There is in the record evidence which indicates that members of the crushed stone industry

---

**7.** The Regulations describe chemical or metallurgical grade limestone as a more general classification than either. T.R. 118 (1939 Code) § 39.23(m)–5(b). But see Riddell v. Victorville Lime Rock Co., 1961, 9 Cir., 292 F.2d 427, 434.

classified crushed marble solely as by-products from dimension marble quarries, and do not consider the substantial tonnage of metamorphosed limestone as commercial marble. We have examined the testimony quoted at length in the appendix to appellant's brief, and we are far from persuaded that any such presumption may be properly drawn. The crushed stone industry sought a depletion allowance of fifteen per cent to the crushed stone industry. The representatives of the limestone industry sought a fifteen per cent depletion allowance for metallurgical and chemical grade limestone. Congress acted and granted a five per cent rate to marble, a ten per cent rate to ordinary limestone, and a fifteen per cent rate to chemical and metallurgical grade limestone. We find nothing in the legislative history to lead us to believe that Congress adopted a standard which would compel the classification of appellee's deposit as 'marble' within the commonly understood commercial meaning of that term." (Emphasis added.)

The government argues that the material is advertised and referred to in various publications as marble, but our examination of the evidence discloses that the material is referred to as marble chips, marble granules, marble aggregate, terrazzo chips, "White Marble" chips, and, at times, as marble. This evidence was before the trial judge and weighed by him. At the most, it indicates that marble may be used as chips; but it does not necessarily indicate that after the material is chipped, it is considered marble. This record indicates that "marble chips" are no more "marble," in the ordinary commercial sense, than "potato chips" are "potatoes," or that sawdust is timber. This material has not been "marble" for many thousands of years, if the term marble includes the quality of being suitable for use as dimension stone. The test is whether the material is considered marble when mined. There is sufficient evidence to indicate that it is not so considered in the trade.

In the alternative, the government contends that the material is dolomite. As indicated supra, "pure" or "mineral" dolomite is exactly 45.7% magnesium carbonate. The taxpayer's material contained 38.0% magnesium carbonate. The commonly understood commercial meaning of the term dolomite, however, does not necessarily mean "pure" dolomite, but includes any carbonate rock with a substantial calcium carbonate content.[8]

There are two views as to the line of demarcation between commercial dolomite and mere magnesium carbonate rock. One view, the so-called "strict" view, requires at least 40% magnesium carbonate to qualify as commercial dolomite. The other, or "broad" view, requires as little as 19%.[9] The question is again one of fact and we cannot say that the court below was clearly in error in deciding that the material was not dolomite within the commonly understood commercial meaning of the term.

---

8. T.R. 118 (1939 Code) § 39.23(m)–5(b): "* * * Dolomite * * * any carbonate rock which contains substantial amounts of the mineral dolomite and which is understood to be dolomite within the commonly understood commercial meaning of the term."

9. Cf. Vulcan Materials Co. v. Sauber, 1962, 7 Cir., 306 F.2d 65; Erie Stone Co. v. United States, 6 Cir., 1962, 304 F.2d 331; Blue Ridge Stone Corp. v. United States, 1959, W.D.Va., 170 F. Supp. 569; Virginian Limestone Corp. v. Commissioner, 1956, 26 T.C. 553; Halquist v. Commissioner, 1959, 33 T.C. 304, reversed on another ground, 1951, 7 Cir., 291 F.2d 49; Rev.Ruling 57–288, 1957–1 Cum.Bull. 518. It must be remembered that a finding that the "commonly understood commercial meaning" of dolomite includes a certain minimum percentage of magnesium carbonate is one of fact, and res judicata in that case, but not a finding of law entitled to weight as precedent. Such a factual finding necessarily depends upon the evidence presented in the individual case.

Indeed, the government's witness, Mr. Berman, insisted that it was "right on the border-line." [10]

█ The questions before the district court were factual ones and, in the absence of a clearly erroneous determination, must be upheld on appeal. Inasmuch as it found the material not to be marble or dolomite, its finding that the material is considered by the trade to be chemical and metallurgical grade limestone, within the commonly understood meaning of the term, must stand.

The judgment appealed from is Affirmed.

See also 295 F.2d 197.

10. " * * * you are right of the border-line here with thirty-eight percent. I think it is magnesium carbonate and is used as a dolomite, but I'm in a quandary just how I would classify it. * * * " In Blue Ridge Stone, supra, 170 F.Supp. p. 573, this same witness, testifying at the instance of the government, said that commercial dolomite must contain at least 90% of the mineral dolomite, i. e., more than 40% magnesium carbonate by weight. In that case the government contended that the material was stone or marble, having a depletion rate of 5%, rather than dolomite.