COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

QUARTZITE STONE COMPANY,
Respondent.

No. 6113.

United States Court of Appeals
Tenth Circuit.

Dec. 23, 1959.

James P. Turner, Atty., Dept. of Jus-
tice, Washington, D. C. (Charles K. Rice,
Asst. Atty. Gen., and Meyer Rothwacks
and Melva M. Graney, Atty., Dept. of
Justice, Washington, D. C., were with
him on the brief), for petitioner.

Murray F. Hardesty, Topeka, Kan.,
for respondent.

Before BRATTON, LEWIS and
BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

The Commissioner of Internal Revenue
petitions for review of a decision of the
Tax Court wherein the Quartzite Stone
Company, a Kansas corporation, was held
entitled to deplete the natural deposits
quarried by the company at the rate of
15 per cent for federal tax purposes
during the years 1951, 1952, and 1953.
The single issue presented is whether
the tax court correctly determined that
taxpayer's mineral deposit was quart-
zite within the meaning of Section 114
(b) (4) (A) (iii), the Internal Revenue
Code of 1939 (26 U.S.C., 1952 Ed. § 114)
thereby rejecting the Commission's con-
tention that the deposit was subject to
but 5 per cent depletion allowance as
stone under Sec. 114(b) (4) (A) (i).
The cited statute provides:

"§ 114. Basis for depreciation
and depletion.

\* \* \* \* \* \*

"(b) [as amended by Sec. 145(a)
of the Revenue Act of 1942, c. 619,
56 Stat. 798; sec. 124(a) of the

Revenue Act of 1943, c. 63, 58 Stat. 21; Sec. 319(a) of the Revenue Act of 1951, c. 521, 65 Stat. 452] Basis for depletion.—

\*    \*    \*    \*    \*    \*

"(4) Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.

"(A) In general.—The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

"(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride, and bromine, 5 per centum,

\*    \*    \*    \*    \*    \*

"(iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, quartzite, diatomaceous earth, metallurgical grade limestone, chemical grade limestone and potash, 15 per centum, and

\*    \*    \*    \*    \*    \* "

The parties and the Tax Court are in accord, and properly so, that it was the congressional intent in listing the allowable depletion for various minerals by name to connote to such terms their commonly understood commercial meanings. In the case of quartzite there can be little doubt that the "common understanding" of what that mineral is varies greatly by locale, use and expert definition. The instant record contains over thirty definitions of the mineral each springing from an authoritative source.

The Tax Court in its opinion did not adopt any specific definition of the mineral, nor attempt original definition, and though the Comissioner now complains of this, we believe the Tax Court properly limited its consideration. The issue there, as here, is not what the defined and end limitations of the mineral are but rather whether taxpayer's particular deposit is quartzite.

The subject deposit is sedimentary in nature, contains between 60 and 65 per cent silicon dioxide; 20 to 30 per cent calcium carbonate; 0.03 to 1.84 per cent aluminum oxide; up to 1.15 per cent iron oxide. It is cemented with calcite so securely that the mineral will break, when fractured, as easily through the grain as through the cement. Many eminent petrographers would not accept the deposit as quartzite for classically the mineral has been defined as a metamorphic, silica-cemented sandstone containing at least 95% silicon.[1] Quartzite meeting the requirements of this definition would be suitable for use as a refractory. Taxpayer's deposit is admittedly not.

However, had Congress intended to limit quartzite by quality a more restricted term would have been used in describing the mineral as was done in listing clay and limestone, i. e. "refractory clay," "metallurgical grade limestone," "chemical grade limestone." And certain it is that quartzite should not be limited to that quality of stone suitable for a particular use. United States v. Wagner Quarries Company, 6 Cir., 260 F.2d 907; Spencer Quarries, Inc. v. Commissioner of Internal Revenue, 27 T.C. 392.

We believe it to have been the intent of Congress to have used the term quartzite in an unrestricted sense and to have set a 15 per cent depletion allowance whenever the mineral was accepted commercially as quartzite. Taxpayer's deposit has been so accepted by the construction industry. For a great num-

1. Stone of such quality was considered by the Tax Court in Spencer Quarries, Inc. v. Commissioner of Internal Revenue, 27 T.C. 392.

ber of years the taxpayer has marketed the deposit as quartzite. Large buyers such as the Union Pacific Railroad have ordered the mineral as "quartzite" and accepted the product as such. The Kansas Geological Survey Bulletin (an official publication) has described taxpayer's deposit as quartzite suitable for use in the construction industry. Under such circumstances we hold that the Tax Court properly determined that the mineral should be classified as quartzite for tax purposes and the judgment is accordingly affirmed.