**ROCK HILL QUARRIES COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 60 C 64(1).

United States District Court
E. D. Missouri, E. D.
March 19, 1963.

William H. Charles and Marion S. Francis, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HARPER, Chief Judge.

Rock Hill Quarries Company, a corporation, hereinafter referred to as taxpayer, brought suit for refund of income and excess profit taxes for the years 1950, 1951, 1952 and 1953. The taxpayer in the years in question was engaged in the business of operating a quarry. For these years the taxpayer claimed on its tax return a depletion allowance of 5%, and in this suit is seeking a refund on the alternate theories that either it was entitled to a 15% depletion since its product was metallurgical or chemical grade limestone, or that its product was calcium carbonate, entitling it to a 10% depletion. The taxpayer has complied with all the necessary conditions precedent to bringing suit for refund in the Federal District Court, and accordingly this court has jurisdiction under 28 U.S.C.A. § 1346. The code provision involved is Section 114(b) (4) (A) of the Internal Revenue Code of 1939, as amended, the pertinent part reading as follows:

"In General. The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

"(i) in the case of sand, gravel, slate, *stone* (including pumice and scoria) * * *, 5 per centum,

"(ii) in the case of coal, asbestos, brucite, dolemite, magnesite, perlite, wallastonite, *calcium carbonates*, and magnesium carbonates, 10 per centum,

"(iii) in the case of metal mines, aplite, bauxite, * * * *metallurgical grade limestone, chemical grade limestone*, and potash, 15 per centum * * *." (Emphasis supplied.)

In addition to the question of whether or not taxpayer is entitled to 5%, 10% or 15% depletion allowance, there was a subsidiary question involving at what point in the production process the depletion should apply. The government contended that the depletion should apply only at the time the first marketable product was obtained. According to the government, this would mean the stone immediately after mining before crushing.

The taxpayer on the other hand contended that the product became salable only after crushing and delivery by it.

After the trial of this case a new regulation was promulgated by the Commissioner of Internal Revenue, which permits taxpayer to include the cost of crushing in computing depletion, and ac-

cordingly the government abandoned its position in this regard (Government's Brief, p. 31). The taxpayer in turn has abandoned its position with regard to transportation (delivery) being a cost of manufacture (Taxpayer's Brief, p. 31). Accordingly, depletion is to be computed including the cost of crushing, but transportation costs are not to be included.

The only remaining issue is whether the product mined by taxpayer is stone, entitling it to 5% depletion; calcium carbonates, entitling it to 10% depletion; or chemical grade or metallurgical grade limestone, entitling it to a 15% depletion allowance.

The Commissioner of Internal Revenue for a period of time took the position that the test to be used in determining in what category a product belonged was the end use of the product itself. This test has been unanimously rejected by the courts (Virginian Limestone Co., 26 T.C. 533, acq. 1957-1 C.B. 5; Spencer Quarries, Inc., 27 T.C. 392, acq. 1957-2 C.B. 6; Wagner Quarries Co. v. United States, D.C., 154 F.Supp. 655, aff'd 260 F.2d 907, 6th Cir.; Quartzite Stone Co., 30 T.C. 511, aff'd 273 F.2d 738, 10th Cir.), and is no longer urged by the government (Government's Brief, p. 9).

■ Thus, with regard to the various rates for depletion the test to be used is what the product consists of and not what it is used for.

■ The product mined by taxpayer is commonly referred to as limestone, which means that the product is a mineral consisting of at least 50% calcium carbonate. Another chemical compound which is found in limestone is magnesium carbonate. The average carbonate content of limestone in this country (that is, the percentage of magnesium and calcium carbonate) is approximately 90 to 92 percent. The St. Louis Testing Company made an analysis of the product from plaintiffs' quarry and found that the average carbonate content was 90.4%, consisting of 81.2% calcium carbonate and 9.2% magnesium car-

bonate. The remaining 9.6% are impurities consisting mainly of silica and iron and aluminum oxides.

The above analysis was made at the request of taxpayer and the government accepted the results. Accordingly, this court finds the analysis to be the true composition of taxpayer's product.

■ The taxpayer's principal contention is that its product is chemical or metallurgical grade limestone. The taxpayer, of course, has the burden of proof. Most of the taxpayer's product was sold for use as a construction material, although small quantities had been sold for agricultural use and to Laclede Stoker Company, a gray iron foundry. No representative of Laclede Stoker Company testified, but representatives of the taxpayer testified that it was used by Laclede Stoker Company for metallurgical purposes. The only other evidence of taxpayer's relating to the chemical or metallurgical qualities of the product was by C. D. Trowbridge, a chemist, who testified that taxpayer's product "will meet the requirements for metallurgical purposes."

Erich Jaschek, Jr., a buyer for Laclede Steel Company, a producer of steel in the metropolitan St. Louis area, was called as a government witness, and testified that his company purchased its limestone from a company in Moser, Missouri, which is near Ste. Genevieve, Missouri, and that the product there obtained contained over 98% calcium carbonate. The company purchased about three or four hundred net tons a month for use as a flux stone. The government's expert witnesses testified that in their opinion taxpayer's product did not qualify as chemical grade or metallurgical grade limestone, and that its products were not suited for a flux stone. These witnesses pointed out that a flux stone was used in steel making for the purpose of removing impurities, and that a product of high purity was necessary. It was on this basis that the taxpayer's product, according to the government experts, would not be suitable for use as a flux stone, since a considerable amount of its

power to remove impurities would be used in eliminating the impurities already present.

It is apparent that there is some conflict in the testimony of the expert witnesses. Under the circumstances, however, the court finds that government's testimony that taxpayer's product is not chemical or metallurgical limestone is the more credible. As indicated, limestone is a very common mineral. Congress, however, established no classification of limestone as such, but in dealing with chemical and metallurgical limestone it is apparent that Congress intended to allow depletion to limestone of a very high quality.

In Bookwalter, District Director of Internal Revenue v. Centropolis Crusher Company, 8 Cir., 305 F.2d 27 at page 33, the court had this to say: "Chemical grade or metallurgical limestone is a rare mineral deposit."

Taxpayer relies heavily upon the case of United States v. Wagner Quarries Company, D. C., 154 F.Supp. 655, aff'd 6th Cir., 260 F.2d 907. However, the Sixth Circuit, in that case, merely held that the trial court's findings were not clearly erroneous necessitating reversal, the issue being one of fact. Furthermore, the evidence showed that approximately 40% of the taxpayer's product was used for chemical purposes, and that the limestone in question had a total of approximately 95% carbonates (approximately 10% being magnesium carbonate and 85% calcium carbonate)—There is no such showing in the case before the court.

■ The testimony in this case of the government's witnesses that taxpayer's product is only of average quality is uncontradicted. Accordingly, the court finds that taxpayer failed to sustain its burden of proof to show that its product was chemical grade or metallurgical grade limestone.

■ The question as to whether taxpayer's product is calcium carbonate is a difficult one. Calcium carbonate is merely the chemical name for a compound. The term has no generally accepted meaning in industry, and rarely does the pure or almost pure compound appear in nature. The parties concede that it is not clear as to what Congress intended when it established this classification.

The Court of Claims in H. Frazier Co., Inc. v. United States, Ct.Cl., 302 F.2d 521, held that crushed limestone sold for railroad ballast was calcium carbonate within the meaning of the statute, qualifying for a depletion rate of 10%. In the Frazier case, the crushed limestone contained at least 85% calcium carbonate, and in the case before the court the calcium carbonate content is 90.4%. In the Frazier case the crushed limestone was suitable for use for agricultural purposes, as is true in the case before the court. The facts in the Frazier case and the case before the court are substantially identical.

The court accordingly finds that the taxpayer's product is calcium carbonate within the meaning of Section 114(b) (4) (A) (ii) of the 1939 Code, as amended, and in the years in question it was entitled to a 10% depletion allowance.

The parties stipulated before trial that the Internal Revenue Service would make the mathematical computations required, and in the event of disagreement the final determination as to the amount of refund due would be left to the court.

The court adopts this memorandum opinion as its findings of fact and conclusions of law, and withholds the entry of judgment until such time as the parties are agreed as to the amount of refund, or the court is advised that the parties are unable to agree upon the amount of refund, in which event the court will make the determination.