**HARBISON–WALKER REFRACTORIES COMPANY, Appellant,**

v.

**UNITED STATES of America.**

**Nos. 14826, 14827.**

United States Court of Appeals
Third Circuit.

Argued Sept. 25, 1964.

Decided Dec. 29, 1964.

Rehearing Denied Jan. 22, 1965.

William J. Kenney, Kenney, Stevens, Hill & Clark, Pittsburgh, Pa., (William R. Hawkins, Pittsburgh, Pa., on the brief), for appellant.

Michael A. Mulroney, Dept. of Justice, Tax. Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys. Dept. of Justice, Washington, D. C., Gustave Diamond, U. S. Atty., Sebastian C. Pugliese, Asst. U. S. Atty., on the brief), for appellee.

Before HASTIE and FORMAN, Circuit Judges, and KIRKPATRICK, District Judge.

HASTIE, Circuit Judge.

On appeal, this suit for income tax refund for the taxable years 1951 and 1952 presents the single question whether the high-silica conglomerate, which the taxpayer extracts from one of its quarries and uses in the manufacture of refractories, qualifies for a 15 per cent depletion deduction as "quartzite" within the meaning of that term in subsection 114(b) (4) (A) (iii) of the Internal Revenue Code of 1939, as amended in 1951, rather than a 5 per cent depletion deduction which subsection 114(b) (4) (A) (i) grants for "sand, gravel" or "stone".[1]

1. "(A) * * * The allowance for depletion * * * shall be—

"(i) In the case of sand, gravel, slate, stone * * * 5 per centum * * *

"(iii) In the case of * * * quartzite * * * 15 per centum * * *." 26 U.S.C., 1952 ed., sec. 114(b) (4) (A).

In South Jersey Sand Co. v. Commissioner of Internal Revenue, 3d Cir. 1959, 267 F.2d 591, 594, after considering the scheme and the legislative history of this controlling subsection, we concluded that "silicon sand and generally sand and gravel * * * have been accepted in the one group, small separate grains; and quartzite by itself, a compact granular rock, * * * was awarded a higher depletion allowance * * *." Applying the reasoning of that decision to the evidence in the present record, the district court has concluded that the mineral deposits in this case are, for percentage depletion purposes, impacted sand and gravel, and not quartzite.[2]

Silicon dioxide, more commonly called silica, in crystalline form is the mineral quartz. As the trial court found in this case, quartz "is found in inexhaustible quantities in the earth, quartz being one of the most abundant, if not the most abundant, solid mineral in the lithosphere * * *. Thus, it is found in almost pure form in sandstone, sand, gravel, quartzite, flint, chert, chalcedony, agate, novaculite" and other rocks.

Historically, it has been the policy and practice of Congress to allow larger percentage depletion deductions for scarce minerals, whose known deposits are likely to be exhausted in the calculable future, than for minerals available presently and in the calculable future in very great quantity.[3] In the 1951 elaboration of the depletion scheme, Congress saw fit to provide a 15 per cent deduction for "quartzite", while for many other minerals only a 5 per cent deduction was approved. It is common knowledge and was pointed out by the court below that quartz, crystalline silica in its various forms, is one of the commonest of minerals and that it is available in inexhaustible quantity. The relatively high 15 per cent allowance for quartzite would be an anomaly in the overall scheme if it should be construed to embrace all quartz.

In commercial and scientific usage, natural deposits of quartz, which have been metamorphosed into an undifferentiated mass of hard rock, usually vitreous in appearance, and can be fragmented only by fractures through the integral mass, are called quartzite. However, there are other, sedimentary deposits of quartz, exemplified by the deposit now in question, which have not been transformed into a hard undifferentiated mass but remain in the form of quartz pebbles imbedded in sandy grains, all loosely cemented into a conglomerate within which the constituent particles retain their identity. If exposed in its natural state in a quarry face, such a conglomerate may be sufficiently cemented to withstand some weathering and to support a substantial overburden and surface traffic. But the mass is so friable that quarrying causes considerable disintegration, and subsequent crushing readily separates the conglomerate into its constituent pebbles and grains.[4] When it contains a high concentration of quartz together with few impurities, the conglomerate, as well as the massive undifferentiated rock which admittedly is quartzite, may be and is used commercially as the principal ingredient of refractories. In chemical composition, there is no significant difference between conglomerate and undifferentiated rock, each of which appears in deposits with varying concentrations of quartz and impurities. There is, however, an obvious physical or structural difference between the two in their natural state. Our problem is to discover whether both of these forms of quartz are comprehended by "quartzite" as that noun is used in a legislative

---

2. The elaborate, carefully reasoned and instructive opinion of the district court is reported in 227 F.Supp. 328.

3. For typical presentations in terms of that policy see 1 House Hearings, Revenue Revision of 1950, 188, 441–464.

4. Whether less friable sedimentary rock may be classified as quartzite, as was held in Commissioner v. Quartzite Stone Co., 10th Cir. 1959, 273 F.2d 738, we have no occasion to consider.

scheme which authorizes a 15 per cent depletion allowance for "quartzite" and only a 5 per cent depletion allowance for "sand, gravel" and "stone".

In South Jersey Sand Co. v. Commissioner of Internal Revenue, supra, we concluded that the statutory classification of minerals for percentage depletion in the 1939 Code gives effect to the visible structural distinction between "quartzite, the hard compact rock" and "sand, hard small grains", appearing as such in natural deposits. Essentially similar reasoning differentiates "quartzite, the hard compact rock", from siliceous conglomerate, a loosely cemented friable aggregate of quartz pebbles and sand. Thus, the rationale of the South Jersey Sand decision supports a conclusion that the taxpayer's conglomerate is not "quartzite" within the meaning of the statute.

 In addition, as we pointed out in the South Jersey Sand case, the Senate Finance Committee, in a 1951 Report, recommending the amendment which first provided a depletion allowance for "quartzite", stated that the "names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning". S.Rep. No. 781, 82d Cong., 1st Sess., 38, U.S. Code Congressional and Administrative Service p. 2008. In the present record we have found abundant evidence, much of it detailed in the findings and opinion below, to support the trial court's ultimate finding that the taxpayer's conglomerate "is not quartzite within the common, ordinary, commercially accepted meaning of the term, nor is it commonly known or referred to as quartzite".

 We have considered the taxpayer's ingenious argument that in the revised scheme of depletion allowances which appears in section 613(b) of the 1954 Internal Revenue Code, Congress in effect granted a 15 per cent depletion allowance for deposits of refractory quartz in whatever form and, in so doing, seemed to have proceeded on the assumption that quartz sand and quartz gravel were different from that sand and gravel which had been granted a 5 per cent depletion allowance in 1951. See particularly, S.Rep. No. 1622, 83d Cong., 2d Sess., 332 (1954), U. S. Code Congressional and Administrative News p. 4629. We find it far from clear that this was the 1954 legislative understanding of the meaning of the 1951 law. In any event, it is clear that the 1951 statute treated quartzite as a mineral deposit of distinctive character which could and should be identified in accordance with general commercial understanding. We are satisfied that our decision in the South Jersey Sand case and the decision of the court below respect and properly implement that manifestation of Congressional intention. We are not persuaded that Congress subsequently came to any contrary considered conclusion about what its 1951 language meant.

Finally, the taxpayer properly points out that the Courts of Appeals for the Fourth and Seventh Circuits have affirmed holdings, albeit on different records as to general commercial understanding, that certain deposits of impacted quartz pebbles and sand were quartzite within the meaning of the 1951 statute. United States v. W. R. Bonsal Co., 4th Cir. 1960, 279 F.2d 465; Standard Realization Co. v. United States, 7th Cir. 1961, 289 F.2d 247. To the extent that the findings in those cases were predicated upon characterization of quarried minerals after crushing into small particles rather than upon the structure and characterization of deposits in place in their natural state, we disagree with them.

For these reasons, the judgment will be affirmed.