G. & W. H. CORSON, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6365–65, 6334–66.   Filed March 30, 1970.

*Jules I. Whitman* and *Peter J. Picotte II*, for the petitioner.
*Dennis C. DeBerry*, for the respondent.

---

OPINION

Section 613(b)(7),[3] provides for a 15-percent depletion allowance for all other minerals not previously listed in the section, except that a 5-percent rate shall be used for any such other mineral "when used or sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes." The terms used in this Code section should be defined as they are commonly understood within their commercially accepted context. In the industry riprap is a term which is used to define large boulders of stone piled up on beaches and other areas primarily to prevent erosion. They provide an inert, stable, permanent material that will stay put and occupy the space in which it is placed. Ballast is a smaller size stone about the size of one's fist or less, used primarily for filling in the spaces between railroad ties. Road material is material placed in roadbeds as a filler which

---

[3] All Code section references are to the Internal Revenue Code of 1954 unless otherwise specified.

Sec. 613(b)(7) reads as follows:

(7) 15 percent—all other minerals (including, but not limited to, * * * dolomite, * * *), * * * except that, unless sold on bid in direct competition with a bona fide bid to sell a mineral listed in paragraph (3), the percentage shall be 5 percent for any such other mineral (other than slate to which paragraph (5) applies) when used, or sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes. * * *

is stable and permanent. Rubble is material made up of broken brickbats and broken concrete, which is used also as a filler in roadbeds. It is an aggregate other than natural stone. Concrete is a mixture of coarse aggregate, fine aggregate, water, and Portland cement, although the term is loosely used to include anything mixed up to achieve a hardness. Petitioner's dolomite is an "other mineral," the depletion rate for which is provided in section 613(b)(7). When this dolomite is used in Poz-O-Pac and Corson's masonry cement, it is not used as riprap, ballast, or rubble and respondent does not contend to the contrary. Within the narrow definition of concrete as containing Portland cement, petitioner's dolomitic limestone used in Poz-O-Pac and Corson's masonry cement is not used as a "concrete aggregate." However, in our view this material is used as road material concrete aggregate, or purposes similar to each of these within the meaning of the statute.

Petitioner contends that since there is a chemical reaction between the dolomitic limestone and the fly ash both in Poz-O-Pac and Corson's masonry cement, the use of the dolomitic limestone in these products is a chemical used and not a use specified in the exceptions contained in section 613(b)(7).

In order to determine the definitional parameters of section 613(b)(7), we have examined the circumstances surrounding the enactment of the provision. Section 114(b)(4)(A) of the 1939 Code, as amended by section 319(a) of the Revenue Act of 1951, provided for a 5-percent depletion rate for sand, gravel, brick, granite, and marble; a 10-percent rate for dolomite; and a 15-percent rate for chemical and metallurgical grade limestone.[4] Thus the depletion

---

[4] SEC. 114 [I.R.C. 1939]. BASIS FOR DEPRECIATION AND DEPLETION

    (b) BASIS FOR DEPLETION.—

    \*       \*       \*       \*       \*       \*       \*

    (4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND FOR CERTAIN OTHER MINES AND NATURAL MINERAL DEPOSITS.—

      (A) IN GENERAL.—The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

        (i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite, marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride, and bromine, 5 per centum,

        (ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, woolastonite, calcium carbonates, and magnesium carbonates, 10 per centum,

        (iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, quartzite, diatomaceous earth, metallurgical grade limestone, chemical grade limestone, and potash, 15 per centum, and

        (iv) in the case of sulfur, 23 per centum,

    of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

rate was determined by reference to the innate qualities of the mineral. See *Virginian Limestone Corporation*, 26 T.C. 553 (1956). *Spencer Quarries, Inc.*, 27 T.C. 392 (1956), and *South Jersey Sand Co.*, 30 T.C. 360 (1958), affd. 267 F. 2d 591 (C.A. 3, 1959). In accordance with the provisions of section 114(b)(4)(A), I.R.C. 1939, as amended by the Revenue Act of 1951, taxpayers who were using chemical and metallurgical grade limestone for purposes which could be fulfilled as well by other minerals, such as granite or gravel, were taking the larger depletion rate to which they were entitled. The uses involved were generally construction uses for which heavy, hard stone such as riprap, ballast, road material, rubble, and concrete aggregate were satisfactory. These uses required no special qualities or purity in the material used, other than size and weight and hardness common to most construction stones. Thus section 114(b)(4)-(A), I.R.C. 1939, as amended by the 1951 Revenue Act, gave a competitive advantage to taxpayers who were using chemical and metallurgical-grade limestone for the same purpose and thus in competition with other minerals which did not have the special grade of purity for which the increased depletion rate was awarded. See *Virginian Limestone Corporation*, *supra*; *Spencer Quarries, Inc.*, *supra*; *South Jersey Sand Co.*, *supra*; *Quartzite Stone Co.*, 30 T.C. 511 (1958), affd. 273 F. 2d 738 (C.A. 10, 1959); and *United States* v. *W. R. Bonsal Co.*, 279 F. 2d 465 (C.A. 4, 1960).

Even though the above-cited cases were decided after the enactment of the 1954 Code, the legislative history of section 613(b)(7) shows that Congress, in providing the present general 15-percent depletion rate for all nonspecified minerals, except when such minerals were used for specified purposes which were comparable to those involved in the cited cases and limiting the rate to 5 percent when such minerals were so used was aware of the "discrimination in percentage depletion rates between materials which are used comparatively for the same purposes." S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 77 (1954).[5]

[5] H. Rept. No. 1337 to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 57, 58 (1954).

"Under the new provision depletion allowances, other than those for oil, gas, and sulfur are divided into two groups; Specific items depletable at 15, 10, and 5 percent and another general class for all other minerals.

"The specific 15-percent group contains: Metal mines, rock asphalt, vermiculite, slate, chemical and metallurgical limestone and ball, china, and sagger clay. All of these items under present law are entitled to the 15-percent rate except slate which has been in the 5-percent category.

"The specific 10-percent group contains: Asbestos, brucite, coal, lignite, perlite, and wollastonite. Under the present law all of these items receive the 10-percent rate although lignite has been covered only by an interpretation that it is a grade of coal.

"The specific 5-percent category includes all the items presently listed at 5 percent except slate which has been raised to the 15-percent class, and in addition the 5-percent class is to include peat and mollusk shells.

"All other minerals not specifically listed are placed in a general class to receive percentage depletion at the rate of 15 percent, subject to the limitation that if they are

The purpose of the "use test" incorporated into section 613(b)(7) was to prevent such discrimination. It seems clear that Congress intended the "use test" contained in section 613(b)(7) to be interpreted in such a way that products competing with minerals which were entitled to only a 5-percent rate would not enjoy a competitive advantage merely because under section 613(b)(7) the producer of "other minerals" is entitled for purposes not so competitive to use the 15-percent depletion rate. Because of the general congressional intent we consider it proper to interpret the phrase "and similar uses" in the exception contained in section 613(b)(7) in such a way as to include those uses reasonably commercially competitive with the uses specifically enumerated.

Petitioner's Poz-O-Pac is used primarily as a road base. Even though the dolomitic limestone functions in Poz-O-Pac as a par-

---

used for the same purposes for which stone is commonly used, they are to be regarded as stone and entitled to a percentage depletion rate of 5 percent. This end use test is imposed to prevent discrimination in percentage depletion rates between materials which are used competitively for the same purposes. The general 15-percent category is intended to include, for example, quartz sands or pebbles when sold for their silica content and novaculite. * * *"

S. Rept. No. 1622 to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 77 (1954):

"Under the new provisions, depletion allowances, other than those for oil, gas, and sulfur, are divided into two groups: Specific items depletable at 15, 10, and 5 percent and another general class for all other minerals.

"The specific 15 percent group includes: Metal mines, rock asphalt, vermiculite, and ball, china, and sagger clay. All of these items under present law are entitled to the 15 percent rate.

"The specific 10 percent group contains: Asbestos, brucite, coal, lignite, perlite, and wollastonite. Under the present law all of these items receive the 10 percent rate, although lignite has been covered only by an interpretation that it is a grade of coal.

"The specific 5 percent category includes all the items presently listed at 5 percent except those given a higher rate, and in addition the 5 percent class is to include peat and mollusk shells (including clam shells and oyster shells).

"Generally, the minerals in the above categories will receive the stated depletion allowance regardless of the way they are used. All other minerals not specifically listed are placed in a general class to receive percentage depletion at the rate of 15 percent, subject to the limitation that if they are used for certain purposes for which crushed stone is commonly used, they are to be entitled to a percentage depletion rate of 5 percent. *This use test is imposed to prevent discrimination in percentage depletion rates between materials which are used competitively for the same purposes.* The general 15 percent category includes all the minerals not specified in the above groups which under present law receive in a few cases 10 percent, but, for the most part, 15 percent depletion. It also includes, for example, quartz sands or pebbles when sold for their silica content, and novaculite. * * *" (Emphasis supplied.)

Conf. Rept. No. 2543, 83d Cong., 2d Sess., pp. 51, 52 (1954):

"Amendment No. 147: Under paragraphs (1), (2), (3), (4), and (5) of section 613 (b) of the House bill, varying rates of percentage depletion were provided for a number of specifically named minerals. In the case of such specifically named minerals, the rates indicated for the particular minerals named applied regardless of the use to which such minerals were put. For example, section 613 (b) (3) of the House bill provided a 15-percent rate of allowance to chemical grade and metallurgical grade limestone and slate; section 613 (b) (4) similarly applied the 10-percent rate to such minerals as brucite, coal, and perlite; and section 613 (b) (5) specified a 5-percent rate in the case of such minerals as granite, marble, and stone. Section 613 (b) (6) of the House bill specified that "all other minerals" (that is, all minerals not otherwise specifically named) are entitled to percentage depletion at a 15-percent rate except that a 5-percent rate was provided for in the case of any other mineral when used or sold

Footnote continued on following page.

ticipant in the cementitious reaction it also serves significantly as a filler and diluent. This latter function is similar to the function of road material in the laying of asphalt and other forms of roadways. Moreover, Poz-O-Pac competes with concrete particularly in the broad use of the term as referring to any combination of aggregates, water, and cementitious material which forms a resultant structurally hard end product. As such the limestone used in Poz-O-Pac has a significant use similar to a concrete aggregate. The face that the dolomitic limestone serves an additional function as part of the cementitious reaction is not sufficient, in light of the significance of its aggregate function, to remove it from the exception provided for in section 613(b)(7).

---

Footnote continued from previous page.

for use by the mine owner or operator as riprap, ballast, road material, rubble, concrete aggregates, dimension stone, ornamental stone, or for similar purposes. This is designated as the "general use test." The House bill also provided that the term "all other minerals" does not include minerals from sea water, the air, or from sources which, by commonly accepted economic standards, are regarded as inexhaustible.

"Under the Senate amendment, uranium was specifically designated under subsection (b) (2) as entitled to percentage depletion at a 23-percent rate. In addition, a new subparagraph (b) (2) (B) was added which applies a 23-percent rate to the following minerals if from deposits in the United States: anorthosite (to the extent that alumina and aluminum compounds are extracted therefrom), asbestos, bauxite, beryl, celestite, chromite, corundum, fluorspar, graphite, ilmenite, kyanite, mica, olivine, quartz crystals (radio grade), rutile, block steatite talc, and zircon, and ores of the following metals: antimony, bismuth, cadmium, cobalt, columbium, lead, lithium, manganese, mercury, nickel, platinum and platinum group metals, tantalum, thorium, tin, titanium, tungsten, vanadium, and zinc.

"The amendment added bentonite to the list of minerals specifically named at the 15-percent rate and the rate of percentage depletion in the case of sodium chloride was increased from 5 percent to 10 percent. The amendment also provided a 15-percent rate of depletion in the case of stone used or sold for use by the mine owner or operator as dimension stone or ornamental stone. In addition, the amendment also placed in subsection (b) (6) within the scope of the term "all other minerals," a list of specific minerals, including such minerals as dolomite, granite, magnesite, marble, limestone, slate, and soapstone, to which a 15-percent rate of depletion is applicable unless used for purposes specified in the "general use test" provided for in that subsection. However, the "general use test" was modified by the amendment so as to exclude from this test the use of minerals as dimension stone or ornamental stone. The amendment also provides that the "general use test" does not apply to a mineral sold on bid in direct competition with a bona fide bid to sell a mineral listed in subsection (b) (3). Thus when limestone is sold for use as road material within an area in which rock asphalt is a competitor and a bid was submitted based on using rock asphalt rather than limestone for road materal under the contract, the limestone would be entitled to depletion at the 15-percent rate.

"*The Senate amendment also removed chemical grade limestone, metallurgical grade limestone and slate from the list of minerals in subsection (b) (3) entitled to a depletion allowance of 15 percent regardless of use and placed those minerals in subsection (b) (6) so that the use thereof will determine whether the 15-percent or the 5-percent rate of depletion applies.*

"The Senate amendment also made a clarifying change in subsection (b) (6) (A) and (B) relating to the minerals not included within the scope of the term "all other minerals."

"The action on this section applies only to years subject to the 1954 Code. *No inference can be drawn from the reclassification of certain minerals and other actions as to the meaning of present law.*

"The House recedes."

(Emphasis supplied.)

The importance of the function of the dolomitic limestone as an aggregate in Poz-O-Pac and its competitiveness in this use with various gravels is highlighted by the evidence showing that manufacturers of Poz-O-Pac under licenses from petitioner's subsidiary use gravel in making Poz-O-Pac.

The major portion of the evidence in this case and an appreciable portion of the argument of the parties concern the question whether there was a chemical reaction between the dolomitic limestone used in petitioner's Poz-O-Pac and the fly ash used therein. From the evidence we conclude that there is a chemical reaction between the dolomitic limestone used by petitioner in its Poz-O-Pac and the fly ash used therein. We have set forth in our findings the facts on which we base this conclusion. However, we do not agree with petitioner's contention that because such a reaction occurs the dolomitic limestone used in Poz-O-Pac is entitled to the 15-percent depletion rate since in our view the use of this dolomitic limestone within the meaning of section 613(b)(7) is as road material and the primary and competitive function served by this dolomitic limestone is as an aggregate.

From the evidence in this case we have concluded that the primary usage of Corson's masonry cement is as a mortar.[6] We have also concluded that the product is used as a mortar as it comes from the bag and the pulverized limestone in the product serves the purpose of the aggregate comparable to the aggregate mixed with Portland cement to make other masonry cements or mortars.

In our view "concrete" as used in section 613 refers to the broader category of materials which compete with concrete and not to "concrete" in its limited definitional sense, a mixture of Portland cement, aggregates, and water. The evidence shows that Corson's masonry cement is used in competition with concretes containing Portland cement within the broader definition of "concrete." Certainly the usage of the dolomite in this cement is similar to the usage of a concrete aggregate.

Although the pulverized dolomite used in Corson's masonry cement serves a function in the cementitious reaction, the material also functions as an aggregate filler and diluent. The significance of this latter function is unclear from the evidence, but such evidence as does bear on this point indicates that the only significant aggregate contained in Corson's masonry cement is the pulverized dolomite. We therefore conclude that the dolomite used in the pro-

---

[6] It should be pointed out that both petitioner and respondent focused on the existence or nonexistence of the chemical reaction involving the dolomitic limestone as the most crucial, if not the single, issue in this case in presenting evidence and in brief. This approach left the Court at a disadvantage in examining the functional use of the dolomitic limestone and the resultant products, Poz-O-Pac and Corson's masonry cement.

duction of Corson's masonry cement is an aggregate, that Corson's masonry cement is a concrete within the meaning of section 613-(b)(7), and that the usage of dolomitic limestone in Corson's masonry cement is for a similar purpose to usage as a concrete aggregate.

We hold that the dolomitic limestone used by petitioner in Poz-O-Pac and in Corson's masonry cement in each of the years here in issue is entitled to the 5-percent depletion rate.

We have found that petitioner's dolomitic limestone was uniformly of chemical and metallurgical grade and that the only additional functions involved in selling it as such were the sizing, washing, blending, and quality-control steps. These additional labor consuming steps were the primary reasons for the price differential in the stone sold for chemcial purposes and that sold as roadstone. There is no evidence that these steps were involved in the stone used in Poz-O-Pac and the indication is that they were not. We find that the average price of roadstone is the appropriate base on which to compute the depletion allowance of dolomitic limestone used in Poz-O-Pac.

*Decision will be entered under Rule 50.*