528 F.2d 51
 75-2 USTC P 9783
 MARYLAND GREEN MARBLE CORPORATION, Appellee,
v.
UNITED STATES of America, Appellant.
ROYAL GREEN MARBLE COMPANY, INC., a New Jersey Corporation,
by its Corporate Successor, General Stone and
Materials Corporation, a Virginia
Corporation, Appellees,
v.
UNITED STATES of America, Appellant.
STONE PRODUCTS CORPORATION, Appellee,
v.
UNITED STATES of America, Appellant.
ROYAL GREEN MARBLE COMPANY, INC., Appellee,
v.
UNITED STATES of America, Appellant.
SOUTHERN AGGREGATES, INCORPORATED, Appellee,
v.
UNITED STATES of America, Appellant.
 Nos. 74--2132 to 74--2136.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 12, 1975.
Decided Oct. 22, 1975.
 
 William L. Estabrook, III, Atty., Tax Div., U.S. Dept. of Justice (Leigh B. Hanes, Jr., U.S. Atty., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert S. Watkins and Grant W. Wiprud, Attys., Tax Div., U.S. Dept. of Justice, on brief) for appellant U.S.
 Joseph Wysor Smith, Alexander I. Saunders, Roanoke, Va. (Hazlegrove, Dickinson, Smith & Rea, Roanoke, Va., on brief) for appellees.
 Before RUSSELL, FIELD and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Taxpayers, engaged in mining operations, filed initially separate suits in the District Court to recover federal taxes paid as a result of assessments levied on account of the disallowance of depletion allowance claims. While some of the taxpayers mined marble chips and others mined quartzite chips, the basic issue was the same in all cases. For this reason the suits were consolidated for trial. The common issue was whether the taxpayers, in their operations, qualified for the 15 percent rather than the 5 percent depletion allowance, as provided under § 613(b)(7) of the Internal Revenue Code of 1954, 26 U.S.C. It was conceded that the taxpayers so qualified unless it could be said that their product was 'used, or sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes.' At trial, considerable testimony was taken on the 'end use' of the taxpayers' products. At the conclusion of the testimony, the Government moved for a directed verdict. The District Court denied the motion and submitted the cause to the jury, which returned a verdict in favor of the taxpayers. After denial of its motion for judgment n.o.v., the Government appealed from the denial of judgment in its favor. The Government concedes on this appeal that the jury's determination that the taxpayers' quartzite and marble were not 'sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates or for similar purposes' may be 'overturned only where reasonable men could not differ, or, put another way, where there is no substantial evidence to support the verdict.' In our opinion, there was sufficient evidence to require the submission of the issue to the jury and there was 'substantial evidence to support the verdict' of the jury. We accordingly affirm.
 
 
 2
 § 613 expressly grants a depletion allowance of 15 per cent to 'marble' and 'quartzite,' except that a 5 percent rate shall be allowed for any such mineral when used or sold for use 'as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes.'[1] The genesis of the exception from the normal allowance of 15 percent has been accurately described in G. & W. H. Corson, Inc., 54 T.C. 668 (1970), a case cited and relied on by the Government. As set forth in that decision, a taxpayer, who used 'chemical and metallurgical grade limestone for purposes which could be fulfilled as well by other minerals, such as granite or gravel' was being allowed a 15 percent allowance under the statute as it existed prior to the adoption of the excepting language of the Internal Revenue Act of 1954.[2] These uses were 'generally construction uses for which heavy, hard stone such as rip rap, ballast, road material, rubble, and concrete aggregate were satisfactory. These uses required no special qualities of purity in the material used, other than size and weight and hardness common to most construction stones.' This gave, as the opinion went on to comment, 'a competitive advantage to taxpayers who were using chemical and metallurgical-grade limestone for the same purpose and thus in competition with other minerals which did not have the special grade of purity for which the increased depletion rate was awarded.'[3] It was to remove this inequity and to provide a like depletion allowance for any unspecified material, whether marble or quartzite, where that material was used for a purpose and in a way where material such as 'rip rap, ballast, road material, rubble, concrete aggregates,' without any 'special qualities or purity * * * other than size and weight and hardness common to most construction stones' was 'satisfactory' and to deny any competitive advantage between materials used for the same purpose. It follows from this exposition of the legislative history, as detailed in Corson, that Congress intended that only when quartzite or marble was used for the same purposes as 'construction stones' and was being sold and used in competition with such 'construction stones,' were they to be denied the 15 percent depletion allowance and placed within the class of minerals allowed but a 5 percent deduction.[4]
 
 
 3
 When the exception is construed with its legislative purpose in view, it is obvious from the record that it was a question for the jury whether the products of the taxpayers in this case were sold or used 'for the same purpose and thus in competition' with materials generally used in roadbuilding or construction and having 'no special qualities or purity * * * other than size and weight and hardness common to most construction stones.' The evidence, largely uncontroverted, was ample that the taxpayers' products were not sold in competition with ordinary 'construction stones.' Their products, according to testimony offered by the taxpayers, had special and unique features that distinguished them from ordinary 'hard stone,' whether formed by concrete or consisting of rubble or being simply riprap or ballast. The marble chips, produced by two taxpayers, were used exclusively in the manufacture of terrazzo flooring because of their special coloring, and the quartzite, produced by the other taxpayers, was used in the manufacture of architectural precast panels, because they had decorative qualities which were distinctive. Because of their special qualities, the evidence indicated that they commanded a price which showed that they were not 'in competition' with ordinary stone or aggregates nor could they be regarded as such. Thus, in the Roanoke areas where these actions were tried, the marble chips concededly sold at a price approximately 50 times the average price for a like quantity of concrete aggregates and the quartzite chips at approximately 25 times such cost. While it is true that either product could probably have been used in road construction, as the Government contended, it would be incredible that any one would so use them or that they would be 'sold' for such use, in view of the extraordinary disparity in cost. Moreover, the unique features of the taxpayers' products would be entirely wasted if used as simple construction stone. Without reviewing other details in the testimony supporting the contentions of the taxpayers, we find the evidence discussed sufficient to justify the submission of the cause to the jury.
 
 
 4
 Nor do we find G. & W. H. Corson, Inc., supra, in conflict with our conclusion. There, the trial court found as a fact that the dolomitic limestone in question was used 'as road material and the primary and competitive function served by this dolomitic limestone is as an aggregate.'[5] At another point, it stated that 'in our view this material is used as road material concrete aggregate, or purposes similar to each of these (referring to the various materials specifically named in the exception) within the meaning of the statute.'[6] In affirming the decision of the Tax Court, the Circuit Court in 453 F.2d 578 (3 Cir.), said that 'we think the Tax Court reasonably construed the phrase 'for similar purposes' as including 'those uses reasonably commercially competitive with the uses specifically enumerated.' And the Tax Court opinion adequately shows such commercial competition in this case.'[7] That clearly is not this case. The products involved in these actions are not used as 'road material' in a manner in which it could be said that 'riprap, ballast, road material, rubble, and concrete aggregate were (as) satisfactory' or were 'reasonably commercially competitive.' In our opinion, this case, on the contrary, is controlled by the persuasive reasoning of Judge McMillan in W. R. Bonsal Co. v. United States (W.D.N.C.1972), 72--1 U.S.T.C. Par. 9175.
 
 
 5
 Accordingly the judgment of the District Court is affirmed.
 
 
 6
 Affirmed.
 
 
 
 [1]
 All of these minerals, as identified in the statute, are to be given their "commonly understood commercial meaning." South Jersey Sand Company v. C.I.R. (3d Cir. 1959), 267 F.2d 591, 593, n. 3
 For a definition of 'quartzite,' see United States v. W. R. Bonsal Company (4th Cir. 1960), 279 F.2d 465, 468--9, and for one of 'aggregate,' see Pioneer Gravel Equip. Mfg. Co. v. Diamond Iron Works (8th Cir. 1934), 72 F.2d 161:
 "Aggregates' is the name for materials consisting largely of rock, gravel, and sand used for the construction and surfacing of highways or, as a component part, in forming concrete for such construction.'
 
 
 [2]
 See United States v. W. R. Bonsal Company, supra; National Lime & Stone Co. v. United States (6th Cir. 1967), 384 F.2d 381, 382; C.I.R. v. Quartzite Stone Company (10th Cir. 1959), 273 F.2d 738, 739--40
 
 
 [3]
 54 T.C. at 676
 
 
 [4]
 This description of Congressional intent in the adoption of the exception is confirmed by the House Report on the Internal Revenue Code of 1954. In that Report, it is stated:
 All other minerals not specifically listed are placed in a general class to receive percentage depletion at the rate of 15 percent, subject to the limitation that if they are used for the same purposes for which stone is commonly used, they are to be regarded as stone and entitled to a percentage depletion of 5 percent. This end use test is imposed to prevent discrimination in percentage depletion rates between materials which are used competitively for the same purposes. The general 15-percent category is intended to include, for example, quartz sands or pebbles when sold for their silica content and novaculite.
 3 U.S.Code Cong. & Admin.News (1954) at p. 4084.
 The last sentence in the above quotation it seems to us makes plain that when quartzite or marble is sold for a use requiring their unique characteristics as distinguished from use as ordinary stone, they fit the qualifications for the 15 percent allowance.
 
 
 [5]
 54 T.C. at 679
 
 
 [6]
 54 T.C. at 675
 
 
 [7]
 453 F.2d at 580